Michael SMITH, et al., Plaintiffs,

v.

CPC INTERNATIONAL, INC., et al., Defendants.

No. 97 CIV. 1547(CM).

United States District Court, S.D. New York.

Nov. 8, 2000.

Michael Howard Sussman, Law Offices of Michael H. Sussman, Goshen, NY, Scott A. Thornton, Thornton & Partners, New Hampton, NY, for Michael D. Smith, Edward M. Benish, Jeffrey C. Price, William D.

Scott Alexander Thornton, New Hampton, NY, for Walter Arasimowicz, James J. Harrington, Eugene Meyung.

Robert A. Horowitz, Karen Y. Bitar, Greenberg, Traurig LLP, New York, NY, for CPC Intern., Inc., CPC Baking Distribution Co., Inc., BestFoods, Inc., BestFoods Baking Co., Inc.

## ORDER DISPOSING OF MISCELLANEOUS PRETRIAL MATTERS [1]

McMAHON, District Judge.

1. There seems to be some dispute about whether Count V of the amended complaint, which asserts a claim asserted by plaintiff Michael Smith for a 1993 breach of contract resulting from the reallocation of his routes survived the mandate of the Second Circuit. This is a distinct claim, both factually and legally, from the claims asserted by all plaintiffs in Count IV, to the effect that CPC breached its contracts with all of them by initiating the distributorship sale and subsequently by terminating the parties' business relationships. (See *Smith v. CPC International, Inc.,* No. 97 Civ. 1547, 1998 WL 50204, 1998 U.S. Dist. LEXIS 2144 (S.D.N.Y. Feb. 6, 1998)). Judge Jones of this Court dismissed both claims. The Second Circuit clearly reversed Judge Jones as to her dismissal of Count IV. The question is whether it also reversed her dismissal of Count V.

I have never encountered a case where the intentions of the Court of Appeals were less clearly set forth. (I hasten to add that I can well understand at least some of this confusion, as the papers the parties have submitted to me are far from models of clarity.) Nonetheless, after parsing all the papers before me, I intend to try Count V.

The relevant fact, as gleaned from the record, are these:

*First,* the Second Circuit chose to affirm portions of Judge Jones' decision by summary order, and to deal only with the part of her decision that it reversed in an opinion. The summary order is the only segment of this bifurcated ruling that is absolutely, pristenely clear. It says: "ON CONSIDERATION WHEREOF IT IS HEREBY ORDERED, AFFIRMED, ADJUDGED AND DECREED that the judgment of said District Court be and it is hereby AFFIRMED as to the plaintiffs' ERISA and negligent misrepresentation claims." Similarly, the Second Circuit's published decision reversing Judge Jones' decision to dismiss what it termed plaintiff's "breach of contract claim" (singular) recites that, ". . . [W]e AFFIRM the judgment of the district court as to the plaintiffs' ERISA and negligent misrepresentation claims, substantially for the reasons stated in its memorandum and opinion in *Smith v. CPC International, Inc.* No. 97 Civ. 1547, 1998 WL 50204 (S.D.N.Y. Feb.6, 1998)". Therefore, it seems quite clear that the Second Circuit did not affirm Judge Jones' dismissal of any claim for breach of contract. It affirmed only her dismissal of the ERISA and negligent misrepresentation claims.

*Second,* the Second Circuit's opinion was later amended to delete any suggestion that it was affirming any a claim for breach of implied covenant of good faith and fair dealing. However, contrary to the suggestion made to me at a recent pre-trial conference, Count V (the count that defendants whose dismissal defendants believe was affirmed *sub silentio* by the Court of Appeals) is not a claim for breach of implied covenant. I have reviewed the amended complaint, and Count V clearly states a claim for breach of contract. Count VI, beginning at paragraph 63 of the Amended Complaint, purports to state a claim for Breach of Implied Covenant of Good Faith and Fair Dealing.[2] Thus, the sub-

1. This order will be further edited by the Court before it becomes final. However, as time is short, I am sending this draft to the parties today. It is substantively complete.

2. Matters are unnecessarily confused by counsel's sloppy proof-reading. The amended complaint actually contains two separate counts labeled Count V (one for breach of the

sequent amendment of the Second Circuit's published opinion says nothing about whether Judge Jones' dismissal of Count V was affirmed or reversed.

*Third,* notwithstanding the fact that plaintiff pled two separate and distinct breach of contract claims, the Second Circuit repeatedly refers to plaintiff's breach of contract "claim" (singular), as though there were only one such claim. But I read far less into that than defendants do. No doubt, the Second Circuit talked about breach of contract in the singular rather than the plural because Judge Jones chose to deal with both breach of contract claims in a single section of her opinion, conflating her analysis (although clearly explaining that there were two claims: one for the parties' termination and one for the reallocation of Smith's New Jersey route). The reason why she did this makes perfect sense: as far as Judge Jones was concerned, CPC had articulated a legitimate business reason for taking both those actions, so they could be analyzed (and thrown out) together. Where the confusion arises is that CPC articulated different business reasons for taking the two different actions, and in its opinion, the Second Circuit addressed only those reasons that pertain to Count IV (termination of the routes). It did not say anything about the reason relied on by CPC to justify the reallocation of Smith's New Jersey route (Count V). That reason was Smith's alleged poor performance on that route (See 1998 WL 50204, *4, 1998 U.S. Dist. LEXIS 2144 at *4)—an issue the parties stipulated played no part in the ultimate termination of Smith's and his co-plaintiffs' distributorships.[3]

I agree with the parties that this is all very confusing. But apparently it was not so confusing that the parties could not deal with it in their pre-trial order: that document contains specific references to the claimed breach of contract due to the realignment of the New Jersey routes. Thus, before I got involved, the parties were fully prepared to take two breach of contract claims to trial.

Then, I fear, this unwary Court fell into the same trap as the Second Circuit had. As the parties know, I spent considerable time parsing the Second Circuit's opinion, to try to figure out what issues were left to try following remand. During that exercise—understandably, but perhaps foolishly—I focused exclusively on the Second Circuit's opinion, without referring the prior proceedings. Since the Second Circuit discussed only the reasons adduced by CPC for terminating the plaintiffs' routes (Count IV), I discussed only the reasons adduced by CPC for terminating the plaintiff's routes (Count IV). And I, like the Second Circuit, referred to plaintiffs' breach of contract "claim" (singular). So when I discussed the fact that there was only one potentially legally significant reason proffered by defendants for their treatment of plaintiffs, and ruled that I would not allow proof of any other reasons, I was thinking only of Count IV. Count V never entered my head, let alone my decisional calculus. Therefore, the parties should not read my September 13 decision as addressing in any particular the fate of Count V.

We are on the eve of trial (again). The parties included the New Jersey contract issue in their pre-trial order. There is absolutely no way to tell from the Second

New Jersey contract, one for breach of implied covenant). Obviously, they cannot both be Count V. Judge Jones referred to the second of those counts—the one for breach of implied covenant—as Count VI. So shall I.

**3.** Further ambiguity arises when one realizes that Judge Jones dismissed the two breach of contract claims (Counts IV and V) solely be-

cause plaintiff filed a Rule 56(f) affidavit and demanded further discovery. Judge Jones determined that the Rule 56(f) affidavit did not support the need for any additional discovery. In the most technical sense, the Second Circuit disagreed with her—although it did not mention Rule 56(f) of discovery anywhere in its opinion.

**444**

Circuit's rulings what it thought about Count V; all we can say is that the Court of Appeals did not explicitly affirm Judge Jones' dismissal of that Count. In the circumstances, it seems prudent to proceed to trial on both counts, leaving for later (perhaps for the Court of Appeals itself) any discussion of whether Count V was *sub silentio* dismissed out of the case by the Second Circuit. CPC's rights will not be prejudiced if I follow what appears to be the literal mandate of the Second Circuit (which, as I read it, affirms the dismissal of all claims except those that sound in breach of contract). Should it lose, it will be free to argue on appeal that Count V was dismissed sub silentio and should not have been tried. Judicial economy will be sorely tried, however, if I decline to hear evidence relating to Count V on the ground that it was dismissed sub silentio, and then learn from the Second Circuit that I guessed wrong.

I must address one more issue before I close. Ordinarily, the question of whether CPC had realigned its New Jersey routes on the basis of Smith's performance—which is, of course, the most legitimate of legitimate business reasons—should be submitted to the jury. However, as the Second Circuit recognized in a tag line at the end of its decision in this case, the Court of Appeals had previously held, in a parallel Thomas' English Muffin distributorship case, that CPC had the right to alter territories, which is all that it allegedly did in New Jersey. *See Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169 (2d Cir.1995). Defendant now argues that *Petereit* controls and compels the conclusion that the count is legally insufficient.

This is an argument that can be made at the close of plaintiffs' case or on post-trial submission, but I am not prepared to entertain it now. The time for making motions for summary judgment has long since passed. The trial is scheduled for next Monday, November 13. Again, CPC will not be prejudiced if we take the matter to trial. It will have ample opportunity to raise this issue again, before me and, if necessary, before the Court of Appeals.

2. The only other outstanding matter concerns whether one Robert Funk, whose name does not appear on the pre-trial order witness list, should be allowed to testify. As I indicated in a memo endorsement on a letter dated Monday, the answer is no.

This constitutes the decision and order of the Court.